# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **In re** <br><br> STEPHEN F. MCCLELLAN, <br><br>                       **Debtor** <br> _____ <br><br> STEPHEN F. MCCLELLAN, <br><br>                       **Plaintiff** <br><br> v. <br><br> NEWBURYPORT FIVE CENTS SAVINGS BANK, <br><br>     **Defendant/** <br>     **Plaintiff-in-Counterclaim** <br><br> v. <br><br> STEPHEN F. MCCLELLAN, <br><br>     **Defendant-in-Counterclaim** | **Chapter 13** <br> **Case No. 07-11828-RS** <br><br><br><br><br><br><br><br><br> **Adversary Proceeding** <br> **No. 07-1350** |

## MEMORANDUM OF DECISION AND ORDER ON
## MOTION OF NEWBURYPORT FIVE CENTS SAVINGS BANK
## <u>FOR SUMMARY JUDGMENT</u>

**I. <u>INTRODUCTION</u>**

The plaintiff and chapter 13 debtor, Stephen McClellan ("McClellan"), obtained a construction loan from the defendant, Newburyport Five Cents Savings Bank ("the Bank"), to fund the conversion of a single family house that he owned to two residential condominiums. The project met with significant delays, resulting in default on the loan, failure of the project, and McClellan's loss of the house to foreclosure. Contending that the Bank induced him to enter into the construction loan agreement by fraudulent or negligent misrepresentations as to the

extent of project costs and the value of the condominium units when complete, McClellan now seeks damages against the Bank for fraudulent and negligent misrepresentation (Counts I and II) and violation of the Massachusetts Consumer Protection Act, G.L. c. 93A (Count IV).  He also seeks damages for breach of contract for the Bank's failure to continue paying itself interest on the construction loan from certain contingency funds (Count III).  The Bank has filed a counterclaim for the balance due under the construction loan agreement, $262,474.91, and for leave to setoff McClellan's funds on deposit at the Bank, totaling $121,113.85, against this debt.  The adversary proceeding is now before the Court on the Bank's motion for summary judgment as to both the complaint and the counterclaim.  McClellan opposes the motion.

## II. **FACTS AND PROCEDURAL BACKGROUND**

In April 2005, and at the urging of builders/developers James and Carolyn Bell, with whom he had become acquainted, Stephen McClellan purchased the real property at 52 Washington Street, Newburyport, Massachusetts.  He and the Bells intended to renovate and convert the two-family dwelling thereon into two condominium units for resale and to share the profits.  To that end, McClellan also entered into an agreement with Carolyn Bell under which Bell was to act as the "Project Managing Partner," responsible for the building and construction aspects of the project, and McClellan was to fund the project.  With Bell's help, and after he had first acquired the property and entered into his agreement with Bell, McClellan approached the Bank for a construction loan.  The loan application process was handled for McClellan almost entirely by Carolyn Bell; McClellan had almost no direct contact with the Bank.

In July 2005, the Bank approved, and the parties entered into, a 12-month construction loan to McClellan in the total amount of $730,000; McClellan executed a guaranty of the

2

agreement[1] and gave the Bank a mortgage on the property to secure his obligations to the Bank. The parties contemplated that the proceeds of the loan would be used to refinance the existing mortgages on the property, fund the renovations, and fund closing costs and debt service during construction. The parties contemplated that the principal balance of the loan would be paid from sale proceeds of the completed units.

The project proceeded apace for some time but came to a halt in April, 2006. McClellan had failed to pay real estate taxes owing to the Town of Newburyport, and the Town therefore refused to issue approvals or permits necessary for work to continue. McClellan did finally pay the taxes in August 2006, but by that time the loan had come to term and was in default. Negotiations between McClellan and the Bank to salvage the project and the loan continued for months thereafter. In December 2006, and by agreement between the parties, McClellan deposited $149,906.28 in an account at the Bank to fund certain costs. From this account, the Bank, by agreement, paid to itself $28,792.43 for past due interest and attorney's fees. The balance was set aside to fund the cost of completing the project, but it was never used. The Bank eventually scheduled a foreclosure sale for March 29, 2007.

On March 28, 2007, McClellan filed a petition for relief under Chapter 13 of the Bankruptcy Code, thus commencing the present bankruptcy case and, by virtue of the automatic stay, staying the foreclosure sale. The Bank promptly moved for relief from the automatic stay to foreclose. No objections were filed, and on May 17, 2008, the Court granted the motion. The Bank has since foreclosed on the property and has filed a proof of claim in this case for a deficiency in the amount of $240,549.52.

---

[1] The purpose of the guarantee is unclear as McClellan was also the primary and sole obligor on the construction loan.

3

The Bank also filed a second motion for relief from the automatic stay, seeking leave in this instance to setoff McClellan's remaining funds on deposit at the Bank, totaling $121,113.85, against the balance owed the Bank. The Debtor opposed the motion on the basis that the Bank's deficiency claim should be disallowed; as grounds for disallowance of the claim, McClellan asserted essentially the same facts and counts that he now asserts in this adversary proceeding as claims against the Bank. The Court denied the motion for relief from stay without prejudice to its renewal upon resolution of McClellan's challenges to the Bank's deficiency claim.

McClellan also filed an objection to the Bank's claim "to the extent the Bank claims a security interest in" the two accounts against which it asserted a right of setoff. In support of this objection to claim, McClellan again asserted the same facts and counts that he now asserts in this adversary proceeding as claims against the Bank. At a hearing on the objection to claim, the court continued the matter to the date of the trial in the adversary proceeding.

McClellan then commenced the present adversary proceeding. The complaint is organized into four counts, but three of these include multiple causes of action. Count I is for fraud and Count II for negligent misrepresentation. Both are based on the same three alleged misrepresentations: that the Bank misrepresented to McClellan (1) the potential for profitability with respect to the project, (2) the adequacy of materials the Bank prepared relative to costs associated with the project, and (3) the nature and extent of the Bank's monitoring of the project. At the hearing on the motion for summary judgment, however, McClellan stated that he was no longer proceeding on the third basis, for misrepresentations concerning the nature and extent of the Bank's monitoring of the project; the court understands that the causes of action based on that alleged misrepresentation are withdrawn from Counts I and II. Count III is for breach of contract: McClellan alleges that the Bank, in breach of the agreement between them,

4

discontinued payment of interest on the promissory note from loan proceeds that had been set aside as contingency funds, and that McClellan was injured by this breach. Count IV seeks damages for violation of the Massachusetts Consumer Protection Act, G.L. c. 93A. The bases of this count are not specified in the complaint; however, in his response to the motion for summary judgment, McClellan indicates that the 93A count is based on the following alleged "unfair and deceptive trade practices or acts": (1) the same two misrepresentations that form the basis of the fraud and misrepresentation counts; (2) the Bank's act of entering into the loan agreement notwithstanding its awareness that McClellan had insufficient resources to service the loan; and (3) the Bank's approval of the loan prior to its receipt and review of construction plans, an appraisal, and a construction analysis report, all three of which were contractual prerequisites to approval of the loan.

    The Bank filed an answer in which it denied the allegations of the complaint, asserted affirmative defenses, including the defense of waiver, and asserted a counterclaim. By the counterclaim, which is essentially a reiteration of the proof of claim the Bank filed in this case, the Bank states a claim in contract for the balance owing on the construction loan, $262,474.91, and seeks leave to setoff McClellan's funds on deposit at the Bank, totaling $121,113.85, against this debt. McClellan has not answered the counterclaim.[2]

    The adversary proceeding is before the Court on the motion of the Bank for summary judgment as to all counts of the complaint and of the counterclaim. McClellan opposes the motion in all respects.

---

[2] The answer he filed in this adversary proceeding [doc. #8] pertains to a related but separate adversary proceeding, No. 07-1305, and does not answer the counterclaim herein. In adversary proceeding No. 07-1305, which is awaiting trial, the Bank seeks a determination that its claim against the Debtor is excepted from discharge.

### III. SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Where the burden of proof at trial would fall on the party seeking summary judgment, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of its cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under FED. R. CIV. P. 50(a). Anderson v Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the motion is properly supported, the burden shifts to the adverse party to submit evidence demonstrating the existence of a genuine issue as to at least one material fact. If the adverse party does not so respond, "summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e); Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989).

Where the moving party would not bear the burden of proof at trial, the movant's initial burden is to demonstrate or point out a lack of evidence to support at least one essential element of the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). The burden then shifts to the opposing party to adduce such evidence on each of the disputed elements as at trial would be sufficient to withstand a motion for directed verdict. Anderson v Liberty Lobby, Inc., *supra*. Summary judgment will enter for the movant if the party bearing the burden of proof fails to establish the existence of an element essential to its case. Celotex Corp. v. Catrett, 477 U.S. at 322-323; In re Varrasso, 37 F.3d 760, 763 n.1 (1st Cir. 1994).

## IV. DISCUSSION

### A. Counts I and II:  Fraud and Negligent Misrepresentation

McClellan's counts for fraud and negligent misrepresentation, as these counts are refined by his response to the motion for summary judgment, are based on the following allegations (among others):

1. after McClellan first approached the Bank about financing the construction project but before the parties entered into their construction loan agreement, the Bank, through its agents, made two representations to McClellan:[3]

    a. that the value of the condominiums, when completed, would be $1,320,000; and

    b. that a construction loan in the amount of $730,000 would be sufficient to permit payment of existing loans on the property and all construction and other costs of the project;

2. the representations were false:

    a. the valuation was overstated, because based on the assumption that the condominiums were 300 square feet larger than they actually were;

    b. and the Bank's estimate of construction costs failed to include a line item for real estate taxes;

3. McClellan entered into the construction loan agreement in reasonable reliance on the above misrepresentations; and

---

[3] In his complaint, McClellan relies also on a third representation—about the nature and extent of the Bank's monitoring of the project—but at the hearing on the present motion, McClellan indicated that he was no longer seeking relief on the basis of any such representation.

7

      4.      upon failure of the project, McClellan incurred losses as a result of his entry into the construction loan agreement.

The Bank's arguments for summary judgment as to the counts for fraudulent and negligent misrepresentation are lengthy and, unfortunately, not clearly separated one from another. Disentangled, the Bank's arguments reduce in essence to the following three. First, the Bank did not make the representations in question to McClellan. Second, by contractual agreement, McClellan acknowledged that he was not entitled to rely on the alleged misrepresentations.[4] And third, in the guaranty he gave the Bank as part of the construction loan agreement, McClellan waived and agreed not to assert any claim to any deductions to the amount owed to the Bank.

### 1. Representations to McClellan

In order to prevail on his counts for fraud and for negligent misrepresentation, McClellan must show that the representations in question were made by the Bank, through one of its agents, to him. The Bank contends these counts must fail because McClellan can adduce no evidence that either representation—as to the value of the condos when completed or as to the extent of construction costs—was made to McClellan. Rather, the Bank contends, McClellan admits that he never spoke to anyone at the Bank about the loan, never asked for a copy of the Bank's

---

[4] The Bank also makes two additional arguments that I need not treat at length: that, as a matter of law, a construction lender has no obligation to its borrower to oversee, manage, or guarantee the success of the construction project that the bank is financing; and that the construction loan agreement between the parties specified that the lender had no obligation to the borrower to oversee, manage, or guarantee the success of the construction project that the bank was financing. These arguments are inapposite as McClellan does not assert a count for breach or violation of a duty, contractual or otherwise, on the part of the Bank to oversee, manage, or guarantee the success or profitability of the project.

appraisal before entering into the loan, and never received any documents from the Bank's construction advisor. In response, McClellan relies on his own affidavit in which he explains that the representations in question were not made directly to him but related to him by Carolyn Bell. The Bank does not dispute that the representations in question were made to Carolyn Bell as agent for McClellan in the loan application process. I therefore conclude that there is a genuine issue as to this material fact, and therefore that the Bank is not entitled to summary judgment for lack of a representation to McClellan.

### 2. Reliance

The Bank next argues—and this is the principal thrust of its motion—that by virtue of certain representations that McClellan made to the Bank in the construction loan agreement (including the guaranty) and of certain terms of that agreement, the Bank had no duty to McClellan to ensure the accuracy of its appraisal and of its review of the construction budget, and the Bank had put McClellan on notice that he could not and should not rely on its appraisal and review of the construction budget, such that McClellan therefore cannot reasonably have relied on these, and he is contractually barred from using any such reliance as the basis of suit against the Bank. McClellan's response to the motion for summary judgment includes no answer to this particular argument.

In Massachusetts, which law governs McClellan's claims, the torts of deceit and of negligent misrepresentation require proof of reasonable reliance on the false statement.[5] In part,

---

[5] Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 523, 536 N.E.2d 344, 349 (1989) ("In order for the plaintiff to recover for either intentional or negligent misrepresentation, the plaintiff must prove that [the defendant] falsely represented that the plaintiff would be employed in a position with the new corporation, and that he reasonably relied on such misrepresentation."); Saxon Theatre Corp. of Boston v. Sage, 347 Mass. 662, 667, 200 N.E.2d

the Bank is here arguing that McClellan cannot establish an element essential to his claims for deceit and negligent misrepresentation, the requirement that his reliance have been reasonable. The Bank contends that there is no genuine issue on this material fact because it is undisputed that the terms and representations in question appear in the loan agreement and guarantee, both of which McClellan concedes he signed.

In support of this argument, the Bank cites and relies upon some thirteen separate excerpts from the Construction Loan Agreement. One is on point:[6]

> *Inspections and approvals of the Plans and Specifications,* the Improvements, the workmanship and materials used in the Improvements, and *the exercise of any other right of inspection, approval, or inquiry granted to Lender in this Agreement are acknowledged to be solely for the protection of Lender's interests, and under no circumstances shall they be construed to impose any responsibility or liability of any nature whatsoever on Lender to any party.*

Construction Loan Agreement, p. 3 (emphasis added). This sentence put McClellan on notice that the Bank's various rights of inspection, approval, and inquiry—which clearly include within their scope the Banks's rights to appraise the property and to review the adequacy of McClellan's construction budget—were intended only for the Bank's protection and that they imposed on the Bank no responsibility to him. In view of this language, McClellan had notice

---

241, 244 (1964) (complaint did not make out a case for deceit because any reliance on alleged false representations would not be reasonable); Hogan v. Riemer, 35 Mass. App. Ct. 360, 365, 619 N.E.2d 984 (1993); Commerce Bank & Trust Co. v. Hayeck, 46 Mass. App. Ct. 687, 692, 709 N.E.2d 1122, 1126 (1999); Mahaney v. John Hancock Mutual Life Ins. Co., 6 Mass. App. Ct. 919, 920, 380 N.E.2d 140, 141 (1978) (unreasonableness of reliance is a complete bar to liability for deceit).

[6] The Bank also cites the following language, which it contends appears in the Construction Loan Agreement: "*Lender is under no duty to supervise or inspect the construction or examine any books and records. Any inspection or examination by Lender is for the sole purpose of protecting Lender's security and preserving Lender's rights under this Agreement.*" This language too would constitute strong support for the Bank's argument, but the Court is unable to find it in the Construction Loan Agreement.

10

that the Bank's appraisal and review of the construction budget were intended only for the Bank's own benefit, not for his, and that the Bank had undertaken no responsibility to him for their accuracy.[7]  Therefore, it cannot have been reasonable for McClellan to rely on the Bank's appraisal and budget review, and, as a matter of law, McClellan cannot prevail on his counts for fraud and for negligent misrepresentation.

The Bank makes a second argument based on this same language: specifically, that by virtue of this language, the Debtor has contractually relinquished any right he may otherwise have had to impose liability on the Bank on the basis of its appraisal and budget review.  In essence, the Bank is arguing that the cited language is a contractual waiver of sorts.  The Court agrees.  Under this language, McClellan has agreed that the Bank's rights of inspection—as to the value of the property when completed (the appraisal) and as to the costs of completing the project (the budget review)—shall "under no circumstances . . . be construed to impose any responsibility or liability of any nature whatsoever on Lender to any party."  This waiver encompasses the tort claims presently at issue.  Accordingly, the Bank is entitled to summary judgment on the fraud and negligent misrepresentation counts on two grounds:  that his reliance on the alleged misrepresentations (if indeed he did rely at all) cannot have been reasonable; and that he has contractually waived his right to assert these claims.

## B.  Count III:  Breach of Contract

---

[7] Many other passages in the Construction Loan Agreement, though less directly on point, bolstered the message that the Bank's various reviews and approvals, and its decisions to advance funds, were intended for the lender's benefit, not the borrower's, and should not be construed as representations on which the borrower should rely.  The passage on which the Court here relies is not an isolated limitation of responsibility in fine and obscure print. No one could read the Construction Loan Agreement without being put on notice, at least inquiry notice, as to the Bank's purpose in appraising the property, reviewing the construction budget, and proceeding with the loan on the basis of what it concluded as to value and the budget.

In Count III, McClellan seeks damages for breach of contract. McClellan alleges that the Bank, in breach of the agreement between them, discontinued payment of interest on the promissory note from loan proceeds that had been set aside as contingency funds, and that McClellan was injured by this breach. The Bank seeks summary judgment as to this count, arguing that it was under no obligation to continue advancing interest; rather, the agreement between the parties merely *permitted* the Bank to fund interest payments from loan proceeds. In support of this argument, the Bank cites and relies upon a provision in the Bank's commitment letter of June 27, 2005, which McClellan signed and which, by its terms, was incorporated by reference into the Construction Loan Agreement. The provision states:

> All payments of interest . . . due to Lender under the loan *may* be paid to the Lender by making advances to itself under the Loan or by exercising the right of set off on any account of the Borrower or Guarantor with the Lender.[8]

McClellan offers no response to this argument.

There is no genuine issue of fact that the agreement between the parties included the above language. As a matter of law, the language, employing the word "may," is permissive and did not obligate the Bank to use the proceeds to fund interest payments.[9] The Bank is therefore entitled to summary judgment on Count III for breach of contract.

---

[8] Commitment Letter, Exhibit 8 to Motion for Summary Judgment, p. 4 (emphasis added).

[9] In support of this argument, the Bank does not rely on or cite the following language of the Construction Loan Agreement. However, on the Court's own independent review, the Construction Loan Agreement clearly supports and is consistent with the Bank's argument. It provides: "Borrower shall use the Loan Funds solely for the payment of: . . . (C) *if permitted by the Lender*, interest due under the Note[.]" Construction Loan Agreement, p. 1 (emphasis added). And it further provides: "Lender shall have no obligation to make Loan Advances or to disburse Loans proceeds if: (A) Borrower or any Guarantor is in default[.]" It is undisputed that, during the period at issue, the loan was in default.

**C. <u>Count IV: Chapter 93A</u>**

In Count IV, McClellan seeks damages for several alleged violations of the Massachusetts Consumer Protection Act, G.L. c. 93A. The Bank seeks summary judgment as to each of these alleged violations on the strength of an affirmative defense, that the right to prosecute any such counterclaim against the Bank has been contractually waived. The Bank relies upon the following language that appears in the Guaranty that McClellan signed as part of the construction loan agreement:

> Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Guarantor, the Guarantor [sic], or both.[10]

The Bank contends that by this clause, the Debtor effectively waived all claims he now makes against the Bank, including the various claims under Chapter 93A. In response to this argument, McClellan does not dispute that the guaranty contains the alleged waiver but argues that he cannot be held to a waiver given as part of an agreement that itself was obtained by fraud. McClellan thus argues that for fraud in the inducement, the construction loan agreement, including the Guaranty and the waiver provision therein, should not be enforced.

Where fraud is invoked not as a tort but as cause to relieve a party from a contract, the test is the same as that applied in actions of tort for deceit.[11] Having already determined that the Bank is entitled to summary judgment on McClellan's tort claims for fraud, the Court now

---

[10] Guaranty, Bank's Exhibit 13, at p. 2.

[11] <u>Plumer v. Luce</u>, 310 Mass. 789, 801-902, 39 N.E. 2d 961, 967 (1942), citing <u>Harris v. Delco Products, Inc.</u>, 305 Mass. 362, 364, 25 N.E.2d 740 (1940).

13

further concludes that McClellan has failed to show that the waiver should not be enforced.  The waiver forsakes all counterclaims that might be asserted in opposition to the Bank's claim for enforcement of the Guaranty.  McClellan's claims under Chapter 93A (as well as his claims for fraud and for negligent misrepresentation) fall squarely within the scope of this waiver.  Accordingly, there are no genuine issues of material fact, and the Bank is entitled to summary judgment on the Chapter 93A claims as a matter of law.

### D. Counterclaim for Balance Due

By its counterclaim, the Bank states a claim in contract for the balance owing on the construction loan, $262,474.91.  The Bank seeks summary judgment on this counterclaim.  McClellan does not deny that he owes a balance of $262,474.91 on the construction loan.  In defense against this claim, McClellan argues only that the contract is unenforceable because the Bank induced him to enter into it by fraud.

This defense fails on two grounds.  First, fraud is an affirmative defense and as such must be affirmatively plead.  FED. R. CIV. P. 8(c)(1).  Having filed no answer to the Bank's counterclaim, McClellan has not pleaded fraud as an affirmative defense and therefore may not now interpose it as a defense to summary judgment.

The fraud defense also fails on its merits.  Where fraud is invoked not as a tort but as cause to relieve a party from a contract, the test is the same as that applied in actions of tort for deceit.[12]  The acts that McClellan contends are the fraud warranting relief from the contract are the very same acts that he offered as the basis for his tort claims for fraud.  Having determined that the Bank is entitled to summary judgment on McClellan's tort claims for fraud, the Court

---

[12] See footnote 11 above.

must further conclude that McClellan has not established the fraud necessary for rescission or non-enforcement of the contract. The Bank is therefore entitled to summary judgment for the balance due in the amount of $262,474.91.

### E. Counterclaim as to Setoff

By its counterclaim, the Bank also seeks authority to set off the Debtor's funds on deposit at the Bank, totaling $121,113.85, against the balance owing on the construction loan. The Bank seeks summary judgment as to the right of setoff, stating that the Construction Loan Agreement, in the following language, gives the Bank a right of setoff as to existing and future accounts:

> Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings or some other account). This includes . . . all accounts Borrower may open in the future. . . . Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.[13]

McClellan does not answer this argument.

There is no genuine issue as to the material fact that the Construction Loan Agreement contains the above language. Nor does McClellan dispute the import of this language: it gives the Bank a right of setoff as to any account he may have at the Bank, except only those—such as IRA, Keough, or trust accounts—that are protected by law. McClellan does not contend that the account in question is protected by law from the Bank's right of setoff. As a matter of law, the Bank is entitled to setoff this account against the balance owing on the construction loan. Summary judgment shall enter for the Bank as to the portion of the counterclaim seeking leave to exercise this right.

---

[13] Construction Loan Agreement, page 5.

## **ORDER**

For the reasons set forth above, the Motion of Newburyport Five Cents Savings Bank for Summary Judgment is hereby granted as to all counts of the complaint and the counterclaim. A separate judgment shall enter accordingly.

Date: August 22, 2008

                                      Joan N. Feeney
                                      United States Bankruptcy Judge